# VENABLE LLP

ROCKEFELLER CENTER
1270 AVENUE OF THE AMERICAS
24TH FLOOR
NEW YORK, NY 10020
T 212.307.5500   F 212.307.5598   www.Venable.com

December 3, 2021

Brian J. Clark
T 212.503.0544
F 212.307.5598
bjclark@venable.com

**VIA ECF**
The Honorable Nelson S. Román
United States District Court
300 Quarropas Street
White Plains, New York 10601

> Re:   *Nurse Anonymous v. Good Samaritan Hospital of Suffern NY, et al.,*
>        Civil Action No. 20-cv-03119 (NSR)

Dear Judge Román:

This law firm represents Defendants Good Samaritan Hospital of Suffern, NY ("Good Samaritan"), Bon Secours Charity Healthy System, ("BSCHS"), and Westchester Medical Center Foundation (the "Foundation," sued herein as Westchester Medical Health Foundation, Inc.) in the above-referenced matter.  Pursuant to Rule 3(A)(ii) of Your Honor's Individual Practices, Defendants respectfully request a pre-motion conference on a motion to dismiss the Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6).

Plaintiff Nicholas Earl ("Plaintiff") asserts in his Second Amended Complain ("SAC") that Defendants (i) failed to accommodate him and discriminated against him in violation of the Americans with Disabilities Act, Rehabilitation Act and the New York State Human Rights Law ("NYSHRL"); (ii) retaliated against him in violation of the NYSHRL and New York Labor Law ("NYLL") § 741; (iii) intentionally inflicted emotional distress against him; and asserts an additional claim of "intentional or reckless of COVID transmission [sic]".  Defendants seek dismissal of these claims on the grounds that Plaintiff fails to state a claim, as required by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**A.     Plaintiff's SAC Fails to Rectify Pleading Deficiencies Highlighted by the Court.**
Despite having the benefit of a pre-motion letter addressing his initial complaint, a motion to dismiss and reply brief on his First Amended Complaint, and an Order and Opinion on same, Plaintiff's SAC is riddled with issues that he *still* fails to rectify.  By way of example only, Plaintiff's SAC still names the Foundation as an institutional defendant, even after the Court in its September 28, 2021 Opinion and Order ("Opinion") clarified the issue and changed the docket accordingly.  Additionally, Plaintiff continues to include an allegation regarding his gender, despite the fact that, as the Opinion pointed out, he does not assert a sex discrimination cause of action.  Finally, the Order directed Plaintiff to clarify whether he is claiming any other discriminatory action aside from Defendants' purported failure to accommodate (*see* p. 12).  Plaintiff fails to do so in the SAC.  Indeed, aside from adding some initial allegations regarding his alleged limitations, and confusingly renaming his eighth cause of action as "intentional or reckless of COVID transmission," the SAC is largely the same as the First Amended Complaint, necessitating dismissal for the same reasons cited in the Opinion.



**B.      BSCHS and the Foundation are Improper Parties.**  BSCHS, the Foundation, and Westchester Medical Center (to the extent Plaintiff intended this entity as a defendant) did not employ Plaintiff.  Again, despite being on notice, Plaintiff failed to remedy this issue.

**C.      Plaintiff Failed to Serve a Notice of Claim.**  To the extent Plaintiff intended to sue Westchester Medical Center, Plaintiff failed to serve a Notice of Claim prior to filing suit.  This is a condition precedent to an action asserting violations of state law or claims sounding in tort against a public benefit corporation.

**D.      Plaintiff is Not a Qualified Person with a Disability**.  Plaintiff is not a "qualified individual" under the law.  If, as he alleges, Plaintiff is truly incapable of working with immunocompromised patients, then Plaintiff is unable to perform the essential functions of his job, since being a nurse—whether in the intensive care unit or in a non-COVID unit—invariably requires exposure to, and interaction with, immunocompromised patients.  Accordingly, Plaintiff is unable to perform the essential functions of his job, with or without an accommodation.  Additionally, Plaintiff does not have a disability.  Plaintiff seemingly raises three potential disabilities: (i) COVID-19, from which he admittedly recovered, and the resultant loss of taste and smell; (ii) perceived contagiousness after recovering from COVID-19; and (iii) chronic kidney disease, which put him at elevated risk of complications from COVID-19.  Based on the allegations in the SAC, such afflictions do not qualify as disabilities under the law.  *See, e.g., Smith v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 8545 (PGG), 2019 WL 6307471, at *8 (S.D.N.Y. Nov. 22, 2019).  Not only is COVID-19 not a disability, but Plaintiff's allegations with regard to loss of taste and smell are insufficient because: (i) "tasting" and "smelling" are not major life activities; (ii) Plaintiff admitted that he was still able to taste and smell after he had COVID-19, as evidenced by his claims about the fit test; and (iii) such losses are merely temporary, and Plaintiff cannot rely on a hypothetical long-lasting impact to claim otherwise.  *Telemaque v. Marriott Int'l, Inc.*, No. 14–CV–6336, 2016 WL 406384, at *9 (S.D.N.Y. Feb. 2, 2016).  Plaintiff's claims regarding Defendants' alleged "perception" of him as disabled are equally unsupported by the law, and belied by his own allegations that research showed that individuals were not infectious after their quarantine period, and that Defendants allowed him to return to work.  Finally, Plaintiff proffers no allegations to suggest that his chronic kidney condition substantially limited his major life activities, especially in light of the fact that any limitations he made have had as a result of this chronic illness did not affect his job, and Plaintiff had been employed as a nurse in the intensive care unit for years with the chronic illness without issue.  *Bobrowsky v. New York City Bd. of Educ.*, No. 97 CV 874 (FB), 1999 U.S. Dist. LEXIS 14528, at *12 (E.D.N.Y. Sept. 16, 1999).

Further, Plaintiff has not suffered an adverse employment action.  A denial of a transfer is not an adverse employment action if "the terms, privileges, duration, or condition of a plaintiff's employment do not change."  *Pimentel v. City of N.Y,* 74 F. App'x 146 , 148 (2d Cir. 2003) (summary order).  Plaintiff's suggested constructive discharge is also insufficient.  *See infra*.

Moreover, Plaintiff cannot show that his accommodation requests were reasonable.  The alleged requests were made in the height of an unprecedented pandemic, where Good Samaritan—and especially the ICU—was inundated with critically-ill patients, where Good Samaritan essentially became a "COVID" hospital, and where supplies of personal protective



equipment ("PPE") were scant, necessitating New York State to impose a rationing of PPE to hospitals.  In light of this, Plaintiff's suggested, and unfounded, accommodation requests of being immediately provided a "special mask" costing $1,700 (instead of the N95 mask everyone else was provided) or being transferred away from ICU (where critical care nurses, with their specialized skills, were desperately needed) were not reasonable.  Good Samaritan's failure to grant these requests were justified by its limited resources, extraordinary, unprecedented need, and the complete lack of ability to guarantee a transfer where Plaintiff would not have to interact with immunocompromised patients.

**E.      Plaintiff Did Not Complain about a Violation of the NYSHRL.**   In order to sufficiently allege a retaliation claim, a plaintiff must have "had a good faith, reasonable belief that [he] was opposing an employment practice made unlawful by [the discrimination statute]." *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001).  Plaintiff did not do so here.  Moreover, Plaintiff did not experience an adverse employment action, as he *voluntarily resigned* from his position.  Plaintiff's attempt to hang his hat on a constructive discharge claim is unavailing, as the allegations in the SAC show that numerous individuals tried to entice him to come back to work, and Plaintiff himself proposed his return to work.

**F.      Plaintiff Cannot Sustain a Claim under NYLL § 741.**   While Plaintiff mentions conversations with nurses regarding the patient, he does so in the context of concern for his *own* health, which is not covered conduct under NYLL § 741.  Additionally, Plaintiff cannot stake this claim on his second-guessing of the educated decisions of the physicians and other nurses. *Villarreal v. Montefiore Med. Ctr.*, No. 20-CV-12 (JPO), 2020 U.S. Dist. LEXIS 168324, at *10 (S.D.N.Y. Sept. 14, 2020) (citations omitted).

**G.      Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress**.  None of the conduct alleged in the SAC is sufficiently extreme or outrageous to satisfy the elements of such a claim.  *Lee v. Sony BMG Music Entm't, Inc.*, 557 F. Supp. 2d 418, 426 (S.D.N.Y. 2008). Beyond this, Plaintiff alleges merely that he was emotionally stable prior to the events, so the "causation is plain." The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**H.      Plaintiff's Eighth Cause of Action is Unintelligible.**   Count Eight in the SAC is "Intentional or Reckless of COVID Transmission."  Defendants are unable to deduce what Plaintiff is attempting to assert in this cause of action, and contend that it fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 8.  Notwithstanding the foregoing, to the extent that this indecipherable claim is premised on negligent or reckless conduct, it would be precluded by the Workers' Compensation Law's exclusivity provision.

We thank the Court for its consideration of the foregoing.

Respectfully submitted,
/s/ Brian J. Clark

3